```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                  EASTERN DIVISION
```

Jason F. Bennett,              :

    Plaintiff,             :

  v.                           :   Case No. 2:15-cv-0090

Carolyn W. Colvin, Acting      :   JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,   Magistrate Judge Kemp

    Defendant.             :

                REPORT AND RECOMMENDATION

                    I. <u>Introduction</u>

    Plaintiff, Jason F. Bennett, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for social security disability benefits and for supplemental security income. Those applications were filed on May 23, 2011, and alleged that Plaintiff became disabled on April 19, 2011.

    After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on July 13, 2013. In a decision dated July 31, 2013, the ALJ denied benefits. That became the Commissioner's final decision on November 17, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on March 30, 2015. Plaintiff filed his statement of specific errors on June 30, 2015, to which the Commissioner responded on October 3, 2015. No reply brief has been filed, and the case is now ready to decide.

    II. <u>The Lay Testimony at the Administrative Hearing</u>

    Plaintiff, who was 36 years old at the time of the administrative hearing and who is a high school graduate, testified as follows. His testimony appears at pages 124-46 of the administrative record.

Plaintiff first testified that his impairments included some psychological diagnoses along with back problems, obesity, sleep apnea, high blood pressure, and high cholesterol. He injured his knee in 2010 and filed a workers' compensation claim as a result. His back problems included scoliosis and degenerative disc disease. He had good days and bad days with the pain. He could stand for 20 to 30 minutes at a time and could walk for 30 minutes. His knees caused problems climbing stairs. Also, his sitting was limited to 30 minutes, and he had a hard time stooping or bending over. He could lift ten pounds. He used a cane while walking.

Plaintiff was asked about his sleep apnea. He said that he used a CPAP machine but still had trouble sleeping. As a result, he napped every day. Due to psychological problems, he did not like being around people and had difficulty concentrating. He experienced panic attacks when out in public. He took medications for these problems but they caused drowsiness.

On a daily basis, Plaintiff listened to the radio and did some minor household chores, including microwave cooking. He was able to use a riding mower but had to do so for short periods only, taking breaks in between. His wife did most of the household chores.

### III.  The Medical Records

The medical records in this case are found beginning on page 325 of the administrative record. The Court will summarize the pertinent medical records as well as the opinions of the state agency reviewers. In this case, the pertinent records consist primarily of treatment notes from Dr. Huspen, the treating psychologist, and Dr. Briggs, a consultative examiner.

In his statement of errors, Plaintiff provides a comprehensive summary of the treatment notes from Adena Counseling Center, many of which are difficult to read. See

Statement of Errors, Doc. 15, at 2-9. As a general matter, they show that Plaintiff was complaining of anxiety and irritability and that he had been prescribed various medications. His diagnoses included a mood disorder and social phobia. At various times, he reported an increase in symptoms and also some suicidal thoughts. (Tr. 409-14; 544-52; 557-58; 584-85; 623-26). During the course of treatment, Dr. Huspen reported to the Ohio Department of Job and Family Services that Plaintiff had marked limitations in five separate areas of functioning and that he was unemployable. (Tr. 493).

A consultative psychological evaluation was done by Dr. Briggs on October 4, 2011. Plaintiff told Dr. Briggs that he had anxiety, panic attacks, and bipolar disorder. The combination of his physical and psychological impairments were what kept him from working. He was a below-average student and had some problems getting along with teachers and classmates when in school. The same problems persisted when he was employed. He was reluctant to leave his home but could go grocery shopping late at night if accompanied by his wife. Dr. Briggs noted that Plaintiff "presented as an acutely distressed, distraught, highly anxious man" and that "his relational style was anxious and apprehensive." Dr. Briggs diagnosed a dysthymic disorder, generalized anxiety disorder, pain disorder, and dependent personality disorder, and rated Plaintiff's GAF at 55. He saw Plaintiff's prognosis as fair and thought Plaintiff was impaired to some extent in all work-related areas, and said that Plaintiff was not "cognitively or psychologically capable of fully functioning or to successfully participate within a stressful and highly demanding work force." (Tr. 501-10).

Dr. Huspen, Plaintiff's treating psychiatrist, reported on November 11, 2012, that he had been seeing Plaintiff since March, 2010, and that Plaintiff had been diagnosed with a mood disorder,

social phobia, and chronic pain.  His GAF was 45-50.  Symptoms included loss of interest in activities, psychomotor agitation or retardation, feelings of guilt or worthlessness, thoughts of suicide, sleep disturbance, decreased energy, difficulty concentrating or thinking, and recurrent severe panic attacks. Dr. Huspen stated that Plaintiff had marked impairments in a number of work-related areas including maintaining attention and concentration, maintaining attendance, responding to supervision, and dealing with work stress, and extreme impairments in the areas of performing at a consistent pace and completing a workday and work week without interruption from psychologically-based symptoms.  (Tr. 580-82).

    The records were reviewed by two state agency psychologists. They concluded that Plaintiff had a variety of severe psychological impairments.  The first reviewer, Dr. Hoffman, stated that she gave great weight to Dr. Briggs' opinion, especially in the absence of a treating source opinion (which she apparently had not reviewed), and that Plaintiff was not significantly limited in his ability to carry out short and simple instructions and was moderately limited in his ability to maintain attention and concentration, to work within a schedule, to work closely with others, and to deal with work stress.  He also had restrictions in his ability to deal with changes in the work setting, so that any work tasks should not change often or without notice.  (Tr. 158-60).  Dr. Fernandez, the second agency reviewer, reached much the same conclusion, noting the presence of the first of Dr. Huspen's two opinions (Tr. 182) but, like Dr. Hoffman, attributing significant weight to Dr. Briggs' opinion as being persuasive in the absence of a treating source opinion. She did restrict Plaintiff to superficial contact with others and to simple tasks without strict production quotas or time demands in a low stress environment.  (Tr. 191-93).

### IV. The Vocational Testimony

Dr. Michael Klein was the vocational expert in this case. His testimony begins on page 146 of the administrative record.

First, Dr. Klein testified about Plaintiff's past work. He said that Plaintiff had been a hospital housekeeper, which was a medium, unskilled job, and a material handler (for FedEx), a heavy, semiskilled job.

Dr. Klein was asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level, but who could not climb ladders, ropes, and scaffolds and who could stoop only occasionally. The person also had to avoid exposure to vibration and to moving machinery or unprotected heights. From a psychological standpoint, the person was limited to simple, repetitive tasks. He or she could maintain attention and concentration for two-hour segments over an eight-hour work period, could respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others was occasional and infrequent, and could adapt to simple changes and avoid hazards in a setting without strict production quotas. According to Dr. Klein, someone with those limitations could not do any of Plaintiff's past work, but could do jobs like retail marker, light cleaner, or sorter, all of which were light and unskilled. He gave numbers for those jobs in the State and national economies. Being unable to sit, stand, and walk in combination for a total of eight hours would preclude gainful employment, however, as would the need to miss more than one day a month due to illness or being off task for 15% of the time.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 102-14 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his onset date of April 19, 2011.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including a depressive disorder, a panic disorder, degenerative disc disease of the spine, osteoarthritis of the knees, sleep apnea, hypertension, and obesity.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to work at the light exertional level, but he could not climb ladders, ropes, and scaffolds and could stoop only occasionally. Plaintiff also had to avoid exposure to vibration and to moving machinery or unprotected heights and was limited to performing simple, repetitive tasks.  He could maintain attention and concentration for two-hour segments over an eight-hour work period, could respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others was occasional and infrequent, and could adapt to simple changes and avoid hazards in a setting without strict production quotas.

The ALJ found that, with these restrictions, Plaintiff could not do any of his past relevant work.  However, he could do the three light jobs identified by the vocational expert - retail marker, cleaner, and sorter.  The ALJ further found that these jobs existed in significant numbers in the State and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises three issues. He asserts that (1) the ALJ improperly evaluated Plaintiff's mental residual functional capacity; (2) the ALJ did not properly evaluate the treating source opinion from Dr. Huspen; and (3) the ALJ erred in assigning only some weight to Dr. Briggs' opinion. These issues are considered under the following legal standard.

<u>Standard of Review</u>. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

    A. <u>Mental Residual Functional Capacity</u>

Plaintiff's first argument is that the ALJ did not properly

-7-

evaluate his mental residual functional capacity. In making this argument, he claims that the ALJ grossly mischaracterized the mental health treatment records. After pointing out the discrepancies he perceives between the evidence and the ALJ's summary of it, Plaintiff argues that this view of the evidence also affected the ALJ's evaluation of the opinions of the mental health professionals, Dr. Huspen and Dr. Briggs. The Court will limit its discussion of the first claim of error to the question of whether the ALJ fairly characterized the evidence concerning Plaintiff's mental health impairments.

    The ALJ summarized the mental health treatment records at Tr. 109. He said that Plaintiff complained of depressive and panic-like symptoms, irritability, and anger issues, and said that he did not like being around others and suffered from panic attacks. Plaintiff did not demonstrate any psychotic symptoms, made good eye contact, had a depressed and anxious mood, and, upon consultative examination, did not have any oddities or behavior issues or show any physical agitation. He was prescribed medications to control his symptoms, and reported his depression was controlled by these medications and he was reported on at least one occasion to be stable. That comment was supported by a citation to Exhibit 5F, a 69-page exhibit which deals with physical impairments and which does not include any notes from Dr. Huspen, and which also showed that Plaintiff reported mood swings to the doctors who examined him for his physical complaints.

    The Court agrees that this is not the most complete or accurate recapitulation of the record which could have been made. That, by itself, does not translate into a reversible error, however. The real question is how the ALJ used his understanding of the treatment record in dealing with the opinion evidence, and that is the subject of the next assignment of error.

                            B.   <u>Dr. Huspen's Opinions</u>

The ALJ said the following about Dr. Huspen's opinions:

> The undersigned affords little weight to the opinions of Richard Huspen, D.O. evidenced at Exhibits 16F and 35F. Dr. Huspen deemed the claimant unemployable. This determination is one reserved for the Commissioner. Further, Dr. Huspen opines the claimant would miss more than 4 days of work per month. The objective evidence contained within the evidentiary medical record does not support this rate of absenteeism. Additionally, he provides a much more restrictive residual functional capacity than the totality of the evidentiary record suggests. Thus, Dr. Huspen's opinion is inconsistent with the longitudinal evidentiary medical record, is not supported by the record as a whole, and is inconsistent with other credible opinion evidence of record.

(Tr. 111). The ALJ gave great weight to Dr. Fernandez' opinion, noting that her assessment was "consistent with, and well-supported by the evidence of the record as a whole ...." (Tr. 110).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally

resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

    Despite the Commissioner's effort to bolster the ALJ's decision as being supported by the treatment notes ("It was reasonable for the ALJ to expect that the treatment records of an individual with marked and extreme functional limitations would have resulted in more significant findings beyond Dr. Huspen's findings of depressed mood and restricted/tense affect," Memorandum in Opposition, Doc. 20, at 11), the Court finds the ALJ's decision to be little more than boilerplate recitation of generalities which do not aid in determining whether the decision conforms with the law or is supported by substantial evidence. The ALJ dismisses Dr. Huspen's two opinions as inconsistent with "the totality of the evidentiary record." That is not nearly specific enough to satisfy the articulation requirement set out in §404.1527(c). As this Court said in Van Houten v. Comm'r of Social Security, 2015 WL 792395, *6 (S.D. Ohio Feb. 25, 2015), adopted and affirmed 2015 WL 4537244 (S.D. Ohio July 24, 2015):

> It is ordinarily not enough to summarize hundreds of pages of medical evidence and then to assert, in conclusory fashion, that a treating source opinion is inconsistent with or not supported by that entire body of evidence. That is not sufficiently specific to allow for meaningful review. Cf. Wisecup v. Astrue, 2011 WL 3353870, *8 (S.D. Ohio July 15, 2011), adopted and affirmed 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011).

    Similarly, the ALJ credits Dr. Fernandez' opinion as "consistent with, and well-supported by the evidence of the record as a whole," a statement no more specific. He did not, as the Court noted in the preceding section of this Report and

Recommendation, provide an accurate or detailed summary of Dr. Huspen's notes - and they contain more references to serious symptoms than simply depressed mood and restricted affect, particularly in the area of social functioning, which appears to be the most significant of Plaintiff's mental limitations - or explain either why he believed the notes did not support the opinions given or what sorts of inconsistencies existed between those notes and Dr. Huspen's opinions.  Clearly, a remand for a more thorough and detailed explanation of the reasons for rejecting a treating source opinion is in order, especially given the fact that no state agency reviewer appeared to appreciate the fact that a treating source opinion existed or explained why it was not entitled to substantial weight.  In making this determination, the ALJ is required to follow the process of, first, determining (and explaining) whether the treating source opinion is to be given controlling weight under 20 C.F.R. §404.1527(c) as "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the case; and, only if the ALJ determines that it is not entitled to such weight, to decide (and, again, explain) the weight to be given to the treating source opinion taking into account the other relevant factors laid out in that regulation.  See Gayheart v. Comm'r of Social Security, 710 F.3d 365, 375–76 (6th Cir. 2013).

### C. Dr. Briggs' Opinion

Plaintiff also asserts that the ALJ did not properly evaluate the consultative report authored by Dr. Briggs.  The ALJ gave that report only "some weight," reasoning that

> Dr. Briggs opines the claimant would have some impairment in his ability to understand, remember, and carry out instructions, his ability to maintain attention and concentration, his ability to respond appropriately to supervisors and coworkers, and his ability to respond appropriately to work pressures in a work setting.  Dr. Sylvester (sic) does not provide an

>     exact restriction as to how limited the claimant is in
>     each area of functioning.  However, his opinion that
>     the claimant is limited is largely supported by the
>     evidentiary record and is generally consistent with the
>     other credible opinion evidence of record.  Such
>     limitations are provided for in the residual functional
>     capacity assessed above.

(Tr. 111).

The Court agrees that this treatment is inadequate.  Dr. Briggs' opinion was given significant weight by Dr. Fernandez (although that appears to have been based in part on her statement that there was no treating source opinion, an incorrect statement when made), and the presence of a more restrictive treating source opinion would suggest giving more, not less, weight to Dr. Briggs' view that Plaintiff could not sustain employment.  The ALJ appears to suggest that his residual functional capacity finding is largely consistent with that of Dr. Briggs, but that does not represent a fair reading of the consultative examination report.  From the way in which Dr. Briggs described Plaintiff's presentation to the way in which he worded his conclusions, a reasonable person would have determined that Dr. Briggs entertained serious doubts about Plaintiff's ability to function adequately in any work-related area.  The ALJ either misinterpreted the opinion or simply chose to mischaracterize it in a way that supported his decision.  A more objective reading of the record is in order, and, perhaps, an updated opinion from a medical expert who had the benefit of the opinions of Dr. Huspen and understood them to come from a treating source.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge